# In The Matter Of:

*GREGORY A. CHAPMAN vs.*
*HY-VEE, INC.*

---

*DEPOSITION OF GREGORY A. CHAPMAN*
*June 22, 2011*

---

*Metropolitan Court Reporters, Inc.*
*9200 Indian Creek Parkway, Suite 205*
*Overland Park, KS 66210*
*913-317-8800, Fax: 913-317-8850*
*www.MetropolitanReporters.com*

Original File 110622_-_chapman_gregory_a.txt

Min-U-Script® with Word Index

Case 5:10-cv-06128-HFS    Document 27-2    Filed 08/15/11    Page 1 of 9

Exhibit 2

A. No, not that I remember.

Q. Okay. Has anyone raised those concerns with you since you've left Hy-Vee?

A. No.

Q. When you were at Hy-Vee, did you have any conversations, not necessarily a formal report or complaint, but any informal conversations with anyone above you to the effect that you were concerned the company was misclassifying employees?

A. In -- and you're talking about a 24-year career, so I can't remember all of it. But I do remember specifically at a managers' meeting when they talked about adding assistant managers to the salaried positions. Ron Pearson brought it up, the CEO, former CEO. And they talked about raising the assistant manager position to salary to make it a more desirable position for people to work. And, at that time, there was many discussions amongst store directors back and forth, or if they thought it was a good idea or not a good idea, if they were going to do it or not do it in their specific stores.

Q. Roughly, when was this meeting?

A. I want to say it was 2002 or '3.

Q. So you were a store director at the time?

A.   Yes.

Q.   And are you saying that, prior to that, no assistant managers were classified as exempt?

A.   I can't say no, none, most were hourly.

Q.   And the proposal was what, to give store directors more freedom to classify them as exempt or to give more responsibility to the assistants, or what was the discussion about?

A.   The discussion was about the turnover in that position, and people were leaving, and that we needed to reconsider the way we paid people in that position.

Q.   Prior to that, when -- when you first became a store director, did you have the ability or authority to classify an assistant manager as an exempt employee if you thought that was warranted?

A.   Not that I was aware of.

Q.   You did not believe you had that ability?

A.   (No verbal response.)

Q.   Did that change?

A.   Yes.

Q.   Did it change around that time?

called a second assistant manager for the -- maybe the second half of the amount of time I was there. I don't know what their title changed to when my title changed for sure, but there was another person -- there were three people in management of the store.

Q. So when your title changed to manager of store operations, did your duties change?

A. No.

Q. And then it shows that you became the assistant store director in October of 1999. Was -- did your duties change at that point, or was that just a title change?

A. Just a title change.

Q. And then you became a store director in Maryville in January of 2000?

A. Correct.

Q. And you -- you kept that title until January 26, 2009?

A. Yes.

Q. And then you moved to St. Joe as a general merchandise clerk. This shows you started that position on January 27th, 2009; does that sound right?

A. Yes.

Q. And then, whether you were promoted or

it was a title change, you became the assistant manager of general merchandise on March 16th, 2009?

A. Yes.

Q. And then you resigned in August of 2009?

A. Yes.

Q. When you worked as a store director, did you keep a regular schedule? I mean were there certain days and hours that you worked, or did it vary?

A. It varied.

Q. And what did it depend on?

A. Business, amount of sales. It could depend on if one of the assistants was on vacation or different -- different things could arise that would allow for -- or cause a schedule change.

Q. Were there certain days that you tried to take off?

A. Generally, I took off Sundays.

Q. And you generally worked six days a week?

A. The -- I would -- I tried to work five days a week, but the other day would vary.

Q. And did you generally work particular hours?

managers at other stores should have been classified as salaried?

A. Yes.

Q. And how do you have that knowledge?

A. From the experience I had working in ten different stores working my way up through the ranks.

Q. Okay. And so you would have knowledge to know whether the assistant managers that you worked with should have been classified as salaried?

A. Yes, while I was working with them in the stores, I would have -- I knew what everyone's jobs were, what everyone's responsibilities were that we had.

Q. Okay. What about assistant managers at other stores that you didn't work with, do you feel like you have knowledge to know whether they should be classified as exempt?

A. I feel like they had the same general duties.

Q. And what -- what do you base that on?

A. Well, the ten different stores that I worked at, they had the same general duties for assistant managers.

Q. Okay. Anything else that you base it

person is working in a department, I assume with some exceptions, they -- they need to work in that department?

A.   Yes.

Q.   Okay.  Could you tell me, when you were working at the St. Joe store -- first of all, as I understand your claim in this case, your duties did not change when your title changed?

A.   Yes.

Q.   So your day-to day activities were basically the same the entire time you were at the St. Joe store?

A.   Yes.

Q.   And tell me what your -- what those day-to-day activities were?

A.   Stocking shelves, cleaning, counting merchandise, running the cash register, straightening up, or running back stock, basically -- helping customers.

Q.   When you were at -- working at the St. Joe store, did you ever see a general merchandise employee doing something you didn't think they should be doing?

A.   No.

Q.   Did you ever see a general merchandise

A.      Yes.

Q.      What does HM stand for?

A.      Health market.

Q.      And what does HBC stand for?

A.      Health and beauty care.

Q.      And were those both part of general merchandise?

A.      Yes.

Q.      Okay.  Now, if would you find Exhibit No. 19, which is the job description, I believe, for assistant manager of store operations, assistant manager of perishables, and assistant manager of general merchandise; do you have that?

A.      Yes.

Q.      If you would look at the next to the last page, and Ms. DeVeney asked you about this briefly.  Do you see the box that says, supervisor -- supervisory responsibilities toward the top?

A.      Yes.

Q.      And I believe -- well, if you'd read through that briefly, and let me ask you a few questions.  While you were at the St. Joseph store, did you assist with the selection of any new employees?

A.      No.

Q.    Did you recommend or approve any employee transfers?

A.    No.

Q.    Did you recommend or approve any promotions?

A.    No.

Q.    And did you recommend or approve any discipline?

A.    No.

Q.    Did you recommend or im -- or approve any discharges?

A.    No.

Q.    Did you recommend or approve any salary adjustments?

A.    No.

Q.    And if you would look at Exhibit No. 18, which is the -- some kind of an IRS form that you testified about.  I don't see a number on it so --

MS. DeVENEY:  Which one is that -- oh --

MR. JACKSON:  It's the proceeds from Broker and Barter Exchange Transactions.

THE WITNESS:  Okay.

MS. DeVENEY:  Which number is it?