# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### ST. JOSEPH DIVISION

GREGORY A. CHAPMAN, )
                        )
           Plaintiff, )
                        )     **Case No. 10-6128-CV-W-HFS**
     vs. )
                        )
HY-VEE, INC., )
                        )
           Defendant. )
                        )

### DEFENDANT HY-VEE, INC.'S SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND NOTIFICATION OF PUTATIVE CLASS MEMBERS PURSUANT TO 29 U.S.C. § 216(B)

Jeannie M. DeVeney    MO #46885
Daniel B. Boatright    MO #38803
Anne E. Baggott       MO #59187

LITTLER MENDELSON
A Professional Corporation
1201 Walnut Street
Suite 1450
Kansas City, MO 64106
Telephone: 816-627-4400
Facsimile: 816-627-4444
jdeveney@littler.com
dboatright@littler.com
abaggott@littler.com

**ATTORNEYS FOR DEFENDANT HY-VEE, INC.**

## PRELIMINARY STATEMENT

Plaintiff Greg Chapman has failed to come forth with "substantial allegations" that he and Hy-Vee's assistant managers were "victims of a *single decision, policy or plan*" that violates the law. *See Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007) (emphasis supplied); *Davis v. Novastar Mortgage, Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005). In fact, Chapman has not come forth with *any* allegations that the putative class members were victims of a single decision, policy or plan. Instead, Chapman seeks to certify a collective action where he *admits* that Hy-Vee *did not implement a single decision, policy or plan* regarding the classification of the employees in question, and thousands of classification decisions were made at the store level based on the individual duties of each manager.

Chapman seeks to represent managers who held the following positions: Assistant Manager of Store Operations ("AMO-Store Ops"), Assistant Manager of Perishables ("AMO-Perishables"), Assistant Manager of General Merchandise ("AMO-GM"), and Assistant Manager ("ASM"). From September 2008 to the present, 2,794 people have held one of those positions. Ex. 1, Declaration of Sheila Laing ("Laing Decl."), ¶ 28. Of those, about 1,750 (63%) were classified as exempt at one time or another, and more than a thousand were never classified as exempt. *Id.* Some managers who were classified as exempt during part of the time period in question were classified as non-exempt at other times. *Id.*

*Each* Store Director in *each* store where the particular ASM or AMO worked made an individualized decision to classify *each* ASM or AMO as exempt or non-exempt. Ex. 1, Laing Decl., ¶¶ 20-21. Each Store Director (in more than 230 stores) made these decisions based on the specific duties of the ASM or AMO. *Id.*, ¶ 23. Moreover, the Store Directors have the authority to determine the duties and responsibilities of each ASM and each AMO. Accordingly, the duties of ASMs and AMOs vary widely, sometimes even within the same store, and certainly

i.

between stores.  Ex. 1, Laing Decl., ¶ 11, Ex. 2, Declaration of Tarci Slaybaugh ("Slaybaugh Decl."), ¶¶ 5-34, Ex. 3, Declaration of Brad McAnally ("McAnally Decl."), ¶¶ 4-40.

Given the latitude to classify their own managers as exempt or non-exempt, and given the vastly different duties and responsibilities delegated to ASMs and AMOs, Hy-Vee's Store Directors classified only 63% of their assistant managers as exempt.  Moreover, Chapman *admits* that individual Store Directors analyzed the exemption requirements with respect to each manager to decide whether to classify each as exempt or non-exempt based on the duties and responsibilities actually given to that specific manager.  Ex. 4, Deposition of Gregory Chapman ("Chapman Depo."), 37:2-9, 41:20-43:16, 44:25-45:9.  At most, Chapman's minimal evidence shows that *his* Store Director did not give him supervisory authority when he worked as an AMO-GM.  It does not speak to a common policy or practice regarding either classification or job duties.

Moreover, Chapman admitted in his deposition that at least some members of the putative class were ***properly*** classified as exempt.  In fact, when Chapman was a Store Director, *he* made the classification determinations, and he ***testified that he classified some of his AMOs as exempt based on their job duties.***  Ex. 4, Chapman Depo., 42:8-44:5.  Those AMOs are putative class members in this case.  When Chapman himself admits classification decisions were made in each of 230 different stores, and he admits that some of the people in the putative class were properly classified as exempt, Chapman cannot be similarly situated to potential opt-in plaintiffs, and these claims cannot be proven by representative evidence.

The Fair Labor Standards Act ("FLSA") exemption at issue here is the Executive Exemption.  Both the Department of Labor and courts have recognized that whether an employee meets this requirement is fact-specific and individual, and determining whether a particular

ii.

manager was properly classified as exempt often requires examination of the particular duties and responsibilities of *each* person. In order to properly claim this exemption, the following requirements must be met:

- The employee must be compensated on a salary basis (as defined in the regulations) at a rate not less than $455 per week;
- The employee's primary duty must be managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise;
- The employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent; and
- The employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight.

29 C.F.R. § 541.100(a).

The lenient standard Chapman must meet at this stage cannot vitiate this Court's important obligation to determine whether Chapman has presented the "substantial allegations" and "some evidence to support the allegations" necessary for collective treatment. *See Young*, 503 F. Supp. 2d at 1229. Chapman must at least propose a theory that would permit his claim to be managed on a representative basis with the claims of approximately 1,750 other assistant managers across the Midwest. He has not. In fact, when Chapman's attorney asked him whether AMO-GMs were classified the same way across all Hy-Vee stores, Chapman responded, **"I can't speak for every store."** Ex. 4, Chapman Depo., 216:19-22, 24-25. By his own admission, Chapman cannot speak for every AMO and ASM in every store, yet he is attempting to represent each of these managers in this putative collective action. He has utterly failed to make any showing that he and other potential opt-ins were "together the victims of a common policy or plan" that violated the law. *Young*, 503 F. Supp. 2d at 1229. This case is not appropriate for collective class treatment, and the Court should deny Chapman's motion.

iii.

# TABLE OF CONTENTS

**PAGE**

I. FACTUAL BACKGROUND ...................................................................................1

    A. Hy-Vee's Management Structure and Retail Operations .....................................1

    B. Chapman's History with Hy-Vee ........................................................................3

    C. Store Directors' Classification Determinations ...................................................5

    D. The Putative Class ...............................................................................................8

    E. Chapman's Duties as an AMO-GM Starkly Contrast With Other Potential Opt-In Plaintiffs ..................................................................................................8

II. LEGAL ARGUMENT .........................................................................................13

    A. The Two-Step Analysis .....................................................................................13

    B. Hy-Vee Does Not Have a Policy, Plan, or Practice of Classifying AMOs and ASMs as Exempt ........................................................................................14

    C. Chapman is Not Similarly Situated to the Assistant Managers He Seeks to Represent .........................................................................................................16

    D. Courts Faced with Similar Facts Have Consistently Denied Conditional Certification .......................................................................................................17

    E. Courts in this District Deny Conditional Certification in Similar Situations ......20

    F. The Policies Underlying Conditional Certification and Class Treatment Are Not Present in this Case ..............................................................................22

    G. Chapman Cannot Represent the Putative Class Because His Representation Creates a Conflict for Potential Class Members .......................24

III. PROBLEMS WITH PROPOSED NOTICE .............................................................25

IV. CONCLUSION ..................................................................................................26

iv.

# TABLE OF AUTHORITIES

**STATUTES**

29 U.S.C. § 203(d) ..............................................................................................................24

29 U.S.C. § 213(a)(1) ..........................................................................................................22

29 U.S.C. § 216(b) .........................................................................................13, 15, 24, 26

**UNITED STATES SUPREME COURT CASES**

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) .......................................................................................14, 15, 16

*Hoffman-LaRoche, Inc. v. Sperling,*
    493 U.S. 165 (1989) ....................................................................................................13, 22

**CIRCUIT COURTS OF APPEALS CASES**

*Hipp v. Liberty Nat'l Life Ins. Co.,*
    252 F.3d 1208 (11th Cir. 2001) .........................................................................................20

*Mooney v. Aramco Servs. Co.,*
    54 F.3d 1207 (5th Cir. 1995) ............................................................................................13

*Brown v. Ticor Title Ins. Co.,*
    982 F.2d 386 (9th Cir. 1992) ............................................................................................25

*Dybach v. Florida Dep't of Corr.,*
    942 F.2d 1562 (11th Cir. 1991) ........................................................................................21

**UNITED STATES DISTRICT COURT CASES – WESTERN DISTRICT OF MISSOURI**

*Boyle v. Barber & Sons, Co.,*
    No. 03-0574-CV-W-FJG, 2004 U.S. Dist. LEXIS 29168
    (W.D. Mo. May 21, 2004) ..........................................................................................21, 25

*Davis v. Novastar Mortgage, Inc.,*
    408 F. Supp. 2d 811 (W.D. Mo. 2005) ............................................................i, 14, 20, 21

*Fast v. Applebee's Int'l, Inc.,*
    243 F.R.D. 360 (W.D. Mo. 2007) .......................................................................13, 14, 25

*Hembree v. Mid-Continent Transp., Inc.,*
    No. 08-6094-CV-SJ-HFS, 2010 U.S. Dist. LEXIS 105538 (W.D. Mo. Oct. 4, 2010) .....25

*Kautsch v. Premier Comm'cns,*
    504 F. Supp. 2d 685 (W.D. Mo. 2007) .............................................................................26

v.

*McKinzie v. Westlake Hardware, Inc.*,
No. 09-0796-CV-W-FJG, 2010 U.S. Dist. LEXIS 58078
(W.D. Mo. June 11, 2010) .......................................................................................21, 25

*Young v. Cerner Corp.*,
503 F. Supp. 2d 1226 (W.D. Mo. 2007) .....................................i, iii, 14, 16, 17, 20, 21, 24

**UNITED STATES DISTRICT COURT CASES – OTHER DISTRICTS**

*Basco v. Wal-Mart Stores, Inc.*, No. 00-3184 Section "K"(4), 2004 U.S. Dist. LEXIS 12441
(E.D. La. 2004) ......................................................................................................19

*Bramble v. Wal-Mart Stores, Inc.*,
No. 09-4932, 2011 U.S. Dist. LEXIS 39457 (E.D. Pa. April 12, 2011) ......................19, 23

*Brickey v. Dolgencorp, Inc.*,
272 F.R.D. 344 (W.D.N.Y. 2011) ................................................................................19

*Creten-Miller v. Westlake Hardware, Inc.*,
C.A. No. 08-2351-KHV, 2009 U.S. Dist. LEXIS 60393 (D. Kan. July 15, 2009) ...........26

*Cruz v. Dollar Tree Stores, Inc.*,
Nos. 07-2050 SC, 07-4012 SC, 2011 U.S. Dist. LEXIS 73938
(N.D. Calif. July 8, 2011) ..........................................................................................15

*Diaz v. Electronics Boutique of Am., Inc.*,
No. 04-CV-0840E(Sr), 2005 U.S. Dist. LEXIS 30382
(W.D.N.Y. Oct. 17, 2005) ............................................................................17, 19, 22, 23

*Eng-Hatcher v. Sprint Nextel Corp.*,
07 Civ. 7350 (BSJ), 2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13, 2009) .............19

*Freeman v. Wal-Mart Stores, Inc.*,
256 F. Supp. 2d 941 (W.D. Ark. 2003) ............................................................14, 16, 20

*Gales v. Winco Foods*,
No. C 09-05813 CRB, 2011 U.S. Dist. LEXIS 96125 (N.D. Calif. Aug. 26, 2011) ........15

*Guillen v. Marshalls of MA, Inc.*,
750 F. Supp. 2d 469 (S.D.N.Y. 2010) ............................................................18, 19, 22

*Holt v. Rite Aid Corp.*,
333 F. Supp. 2d 1265 (M.D. Ala. 2004) ........................................................18, 19, 22

*Horne v. United Servs. Auto. Ass'n*,
279 F. Supp. 2d 1231 (M.D. Ala. 2003) ......................................................................13

*Knutson v. Blue Cross & Blue Shield of Minn.*,

No. 08-585 (RHK/JSM), 2008 U.S. Dist. LEXIS 72414 (D. Minn. Sept. 23, 2008) .......21

*Laroque v. Domino's Pizza*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008) ...............................................................19

*Littlefield v. Dealer Warranty Servs., LLC*,
  679 F. Supp. 2d 1014 (E.D. Mo. 2010) ...........................................................14

*MacGregor v. Farmers Ins. Exchange*,
  No. 10-CV-03088, 2011 U.S. Dist. LEXIS 80361 (D.S.C. July 22, 2011) ................15, 16

*Mike v. Safeco Ins. Co. of Am.*,
  74 F. Supp. 2d 216 (D. Conn. 2003) ..........................................................22, 23

*Morisky v. Pub. Serv. Elec. & Gas Co.,*
  111 F. Supp. 2d 493 (D.N.J. 2000) .................................................................23

*Myers v. The Hertz Corp.*,
  No. 02-CV-4325, 2006 U.S. Dist. LEXIS 100597 (E.D.N.Y. May 18, 2006), *affirmed on other grounds*, 624 F.3d 537 (2d Cir. 2010) ..........................................18, 19, 22

*Parker v. Rowland Express, Inc.*,
  492 F. Supp. 2d 1159 (D. Minn. 2007) ...........................................................21

*Ruiz v. Serco, Inc.*,
  No. 10-cv-394-bbc, 2011 U.S. Dist. LEXIS 91215 (W.D. Wis. Aug. 5, 2011) .........15, 16

*Severtson v. Phillips Beverage Co.*,
  137 F.R.D. 264 (D. Minn. 1991) .....................................................................22

*Simmons v. T-Mobile USA, Inc.,*
  2007 U.S. Dist. LEXIS 5002 (S.D. Tex. Jan. 24, 2007) ....................................21

*Vasquez v. Vitamin Shoppe Industries, Inc.*,
  No. 10 Civ. 8820 (LTS)(THK), No. 10 Civ. 8820, 2011 U.S. Dist. LEXIS 74376 (S.D.N.Y. July 11, 2011) ...............................................................................19

**CODE OF FEDERAL REGULATIONS**

29 C.F.R. § 541.100(a) .................................................................................iii, 22, 23

29 C.F.R. § 541.102.........................................................................................22

29 C.F.R. § 541.105.........................................................................................22

29 C.F.R. § 541.106 ........................................................................................23

29 C.F.R. § 541.600 ........................................................................................23

vii.

29 C.F.R. § 541.700 ...........................................................................................................................23

**OTHER SOURCES**

32-21P MANUAL FOR COMPLEX LITIGATION 21 ........................................................................24

Case 5:10-cv-06128-HFS    Document 34    Filed 09/16/11    Page 9 of 37

# I. FACTUAL BACKGROUND

## A. Hy-Vee's Management Structure and Retail Operations

Hy-Vee owns and operates 232 stores in Iowa, Nebraska, Missouri, Illinois, Minnesota, Kansas, South Dakota, and Wisconsin. Most of the stores are traditional grocery stores, although Hy-Vee also operates some stand-alone Drug Stores, Wine & Spirits stores and gas stations associated with some of its grocery stores. The size and breadth of the stores vary widely. Hy-Vee's smallest store employs approximately 18 people and has annual revenue of approximately $2 million. The largest store employs approximately 600 people and has annual revenue of more than $75 million. The remaining stores fall all over the spectrum. Ex. 1, Laing Decl., ¶ 5.

The highest level employee at each Hy-Vee store is the Store Director. The next level of manager in the stores is informally called "Manager Of." At any given store, there could be a Manager of Store Operations ("MO-Store Ops"), a Manager of General Merchandise ("MO-GM"), and a Manager of Perishables ("MO-Perishables") (collectively, "MOs"). Each Store Director has control over the way his or her store is structured and managed, so not all stores fill all three MO positions, and some stores have more than one MO-Store Ops, MO-GM, or MO-Perishables. Some stores also have assistants to the MOs – the AMO-Store Ops, AMO-GM, and AMO-Perishables (collectively, "AMOs"). Not all stores employ AMOs, and some stores employ several; individual Store Directors make those decisions depending on the needs of the store. The duties of the AMOs vary depending on the person's strengths and experiences. Ex. 1, Laing Decl., ¶¶ 9-11; Ex. 2, Slaybaugh Decl., ¶¶ 7, 9-10; Ex. 3, McAnally Decl., ¶¶ 5-7, 12.

Employees known simply as "Assistant Managers" ("ASMs") generally manage the front and back of the store on a day-to-day basis. Most stores have at least one ASM. Bigger stores have several ASMs per shift, depending on the number of employees needing supervision. Ex. 1, Laing Decl., ¶ 10. The duties and responsibilities of the ASMs vary widely based upon the

1

size of the store, the experience of the ASM, and the confidence the Store Director has in the ASM, among other reasons. Ex. 1, Laing Decl., ¶ 11; Ex. 2, Slaybaugh Decl. ¶¶ 6-9; Ex. 3, McAnally Decl. ¶ 8.

Hy-Vee's business model provides for a tremendous amount of decentralized decision-making, giving Store Directors a significant amount of autonomy within their stores. Ex. 4, Chapman Depo. 55:2-5; Ex. 1, Laing Decl. ¶¶ 6-18; Ex. 2, Slaybaugh Decl. ¶¶ 7-8; Ex. 3, McAnally Decl. ¶¶ 4-5. Generally speaking, Store Directors determine or delegate the determination of the pricing and layout in their stores, which products they will sell, how they will display the products, and which items they want to advertise locally. They also determine (or delegate the determination of) how many employees will work in each department, what those employees will be paid, whether, when and by whom those employees will be evaluated, whether and when those employees will receive raises, and virtually every other decision that impacts the store and the employees in it. Ex. 1, Laing Decl., ¶¶ 6-18; Ex. 2, Slaybaugh Decl. ¶¶ 10-33; Ex. 3, McAnally Decl. ¶¶ 4-6, 12-22, 27-40.

Similarly, Store Directors have unfettered discretion regarding hiring, supervising, and terminating employees in their stores. They can, in their individual discretion, delegate the authority for these tasks to other managers in the store. They can also determine the duties of their managers and make decisions (often based on the individual performance of the manager) about how much authority that person should have in the store. Ex. 1, Laing Decl., ¶¶ 6-18; Ex. 4, Chapman Depo., 55:2-56:20, 57:16-65:2, 85:25-86:20, 87:3-91:8, 149:3-150:4; Ex. 2, Slaybaugh Decl. ¶¶ 12-14, 18, 21-22, 28-33; Ex. 3, McAnally Decl. ¶¶ 12-22, 27-40.

Store Directors can also tailor the duties of a particular manager to add additional tasks depending on the manager's experience, strengths, and aptitude. Ex. 1, Laing Decl., ¶¶ 6-18.

2

Ex. 2, Slaybaugh Decl., ¶ 16, 24; Ex. 3, McAnally Decl., ¶ 6. Based on the needs of the store, Store Directors can combine the duties of two separate job titles such that one person is doing that job. Ex. 1, Laing Decl., ¶ 17.

To provide but one example, at the Omaha #1 store, the AMO-Store Ops, Nick Fitch, prepares the schedule for all the clerks, cashiers, and sackers. Ex. 5, Declaration of Nick Fitch ("Fitch Decl."), ¶ 36. At the St. Joseph store, that duty is currently handled by the Human Resources Manager, but within the last two years has been handled by ASMs and the AMO-Store Ops. Ex. 3, McAnally Decl. ¶ 23. The duties simply are not assigned in the same way from store to store and from time period to time period.

**B.      Chapman's History with Hy-Vee**

Chapman originally began working for Hy-Vee in May 1976 at the Coralville, Iowa, store as a checker and stocker. Ex. 4, Chapman Depo., 70:15-25. He worked for Hy-Vee off and on during the next several years while he was also completing school. *Id.*, 71:19-25, 72:8-11. He left Hy-Vee in 1981 and returned in April 1988 as the manager of the frozen food department in Rock Island, Iowa. *Id.*, 74:14-75:3. He held that position for a few months before he transferred to the Milan, Illinois, store and held the position of assistant shift manager (a title no longer used). *Id.*, 75:7-14. In February 1989, Chapman transferred to the Muscatine, Iowa, store as a shift manager (today's ASM title). *Id.*, 76:8-13.

Chapman then transferred to the Mt. Pleasant, Iowa, store in September 1990 as a second assistant manager. *Id.*, 77:6-11. That title no longer exists, but in that position, Chapman was the third in command at that store. *Id.*, 77:13-17. This was the first time that Chapman was classified as exempt. *Id.*, 77:6-11, 78:7-10. Over the next ten years, Chapman held different management positions at several stores. *Id.*, 78:15-81:13.

In January 2000, Chapman became the Store Director at the store in Maryville, Missouri.

He held that position until January 26, 2009. *Id.*, 81:14-18. At that time, Chapman was stepped down for performance reasons. Ex. 1, Laing Decl. ¶ 29. In order to keep him employed, Hy-Vee asked Brad McAnally, the Store Director at the St. Joseph store, if he would be willing to hire Chapman. Ex. 1, Laing Decl., ¶ 30. Mr. McAnally agreed and hired Chapman in the General Merchandise department. Ex. 3, McAnally Decl., ¶ 24.

Given Chapman's experience within the Company and prior management positions, Mr. McAnally classified Chapman as exempt and paid him a salary of $1,100.00 per week. Ex. 3, McAnally Decl.., ¶ 25.[1] Initially, Chapman's title at St. Joseph was GM Clerk. Ex. 4, Chapman Depo. 22:8-12. Based on the *training that Hy-Vee provided him*, Chapman did not believe that a GM clerk should be classified as exempt, so he talked to Mr. McAnally about that issue. *Id.*, 24:1-17. According to Chapman, approximately two months later, Mr. McAnally called him into his office and told him he was correct that he could not be exempt as a GM clerk. Mr. McAnally then asked Chapman if he wanted to go hourly or stay on salary. Chapman responded that he wanted to stay on salary, so Mr. McAnally made Chapman the Assistant Manager of General Merchandise (AMO-GM). Ex. 4, Chapman Depo. 25:6-16. Chapman held that position until he retired from Hy-Vee in August 2010. Ex. 1, Laing Decl., ¶ 34.

When asked why he never went back to Mr. McAnally to explain that he still did not think his duties warranted exempt status, Chapman's testimony is very telling. He stated:

> When he offered me salary or hourly, I was assuming I was getting promoted to assistant manager of general merchandise and that my job duties would change. And if I was really going to be an assistant manager of general merchandise, then that was fine with me. After a year had went by, I realized my job title – my job – my position had not changed, just my title had, and that's when I went to the State.

---

[1] By way of comparison, the average weekly pay for general merchandise clerks at Hy-Vee is about $512. Ex. 1, Laing Decl., ¶ 32. Chapman's weekly pay was about twice the average.

4

Ex. 4, Chapman Depo. 27:12-20. This testimony clearly demonstrates Chapman's belief that, generally speaking, employees who hold the position of AMO-GM are properly classified as exempt. His complaint was that he – individually – did not have the same job duties and responsibilities as most AMO-GMs and, therefore, he – individually – was misclassified.

### C. Store Directors' Classification Determinations

Hy-Vee does not have a policy requiring all AMOs or ASMs be classified as exempt. Ex. 1, Laing Decl., ¶¶ 20-21; Ex. 4, Chapman Depo., 37:2-9, 39:2-17, 41:20-44:5, 46:24-47:20. Instead, during the time period in question, Hy-Vee's policy was to *not* have a company-wide policy on classifying certain positions as exempt. Ex., 1, Laing Decl., ¶ 21; Ex. 4, Chapman Depo., 37:2-9, 112:20-25, 136:15-137:18. Rather, *as Chapman readily admits*, individual Store Directors determined the classification of each manager, depending upon the duties and responsibilities of the individual manager and using FLSA guidelines. Ex. 1, Laing Decl., ¶¶ 23-27 (attaching Ex. A, Hy-Vee Policy/Procedure Manual Bulletin #411; Ex. B, FLSA Exemption Checklist); Ex. 2, Slaybaugh Decl., ¶¶ 5-6; Ex. 3, McAnally Decl., ¶¶ 10-11; Ex. 4, Chapman Depo., 39:2-17, 41:20-44:5, 46:24-47:20, 92:17-20, 92:25-93:18. In order to ensure that Store Directors had enough information to make appropriate classifications, Hy-Vee's Human Resources department worked with Store Directors to educate them on the requirements of the FLSA exemptions. Using that information, the Store Directors made the decisions. Ex. 1, Laing Decl. ¶ 27; Ex. 2, Slaybaugh Decl., ¶¶ 5-6; Ex. 3, McAnally Decl., ¶¶ 10-11; Ex. 4, Chapman Depo., 92:3-20, 104:20-105:1.

As Store Director, Chapman himself made these decisions. He admitted that he determined how to classify each manager at his store and intended to comply with wage and hour laws, and his decision was final as to the classification. Ex. 4, Chapman Depo., 45:18-46:2, 46:24-47:20, 137:15-18. Indeed, Chapman admitted that – within his own store – he classified

5

some assistant managers as exempt and some as non-exempt, depending on their duties. Ex. 4, Chapman Depo., 41:9-42:12, 42:18-44:5, 46:11-18, 87:3-17, 92:25-93:18. As noted above, company-wide, during the relevant time period, of the 2,794 employees who worked as ASMs or AMOs, more than a thousand of them were never classified as exempt. And some of those who were classified as exempt during some period of time were also classified as non-exempt at other periods of time. Ex. 1, Laing Decl., ¶ 28.

Faced with the fact that he cannot possibly establish (or even allege) a single policy, plan or practice, Chapman has distorted and omitted relevant portions of his own deposition testimony in an apparent attempt to convince the Court that Hy-Vee's prior CEO improperly encouraged Store Directors to classify ASMs as exempt. Doc. 27, p. 4. But even Chapman's testimony provides no support for the argument that Hy-Vee's prior CEO (or any other Hy-Vee manager) encouraged Store Directors to classify any ASMs, or any other employee, as exempt unless those employees met the exemption requirements. Ex. 4, Chapman Depo., 45:18-23, 92:25-93:18.

Chapman testified that, at a Store Director meeting in 2002 or 2003, former CEO Ron Pearson discussed the high turnover rate in the ASM position. Ex. 4, Chapman Depo., 36:7-14. Mr. Pearson then went on to encourage Store Directors to "make assistant managers more a part of the management team to make them stay with the company longer." *Id.*, 38:21-39:1. Chapman further testified Mr. Pearson talked about "raising the assistant manager position to salary to make it a more desirable position for people to work." *Id.*, 35:14-17. In that regard, Chapman admits Mr. Pearson encouraged Store Directors to classify ASMs as exempt, but *only if their duties qualified them for exempt status*. Chapman testified Mr. Pearson "was very clear on the responsibilities that these salaried employees had to have" in order to classify them as exempt. *Id.* at 45:4-6. Chapman's testimony continued as follows:

Q: And what were the responsibilities that Mr. Pearson said the assistant managers had to have in order to be classified as salaried, exempt?

A: They had to supervise several people. I don't remember exactly. Then they had to spend 20 percent of their time doing management work not physical labor. And there might have been other res – and I don't remember.

Q: So, in other words, Mr. Pearson wasn't suggesting that store directors just go back and make everybody salaried, exempt, he was clear that they needed to be – they needed to have these responsibilities in order to justify that?

A: Yes.

Ex. 4, Chapman Depo., 45:10-23.

After the meeting, it was still up to the individual Store Directors to decide whether changes should be made or not. *Id.*, 41:20-23, 46:24-47:20. In fact, Chapman did not make any changes to the exempt status of his ASMs for several years after the meeting, and he never suffered any repercussion because of that. *Id.* at 39:13-17, 41:4-42:4. Chapman later evaluated the duties of his ASMs and promoted one of them to AMO-Store Ops. He made that person exempt, and he did so because he believed that person met the requirements of the exemption. *Id.* at 43:10-45:23.

Chapman was clear in his deposition that nobody ever told him or any other Store Directors to classify employees as exempt if their duties did not meet the FLSA requirements, and he said he was not aware of any Store Directors who intentionally did so. *Id.*, 104:11-19, 137:19-138:9. In fact, Chapman testified that, after the meeting where Ron Pearson discussed the role of assistant managers, Store Directors had lots of conversations about "what they felt like they could do in their stores, what they wanted – were planning to do." Ex. 4, Chapman Depo. 46:24-47:9. Chapman agreed that the decisions would differ from Store Director to Store

7

Director, showing, again, Hy-Vee had no policy to uniformly classify AMOs or ASMs. *Id.*, 47:10-12. It certainly had no decision, policy or plan to *mis*classify them.

### D. The Putative Class

In the past three years, 2,794 AMOs and ASMs have worked in 232 different stores, with at least 232 different Store Directors and more than 232 different management teams in those stores. Ex. 1, Laing Decl., ¶¶ 4, 35-37. Many of the AMOs and ASMs in the putative class have worked under more than one Store Director while they held these positions. *Id.*; Ex. 5, Fitch Decl., ¶¶ 3-8; Ex. 6, Declaration of Doug Kehm ("Kehm Decl."), ¶ 3; Ex. 7, Declaration of Matt Pulverenti ("Pulverenti Decl."), ¶¶ 3-4. And many of them have been classified as both exempt and non-exempt during the past three years in the AMO and ASM roles as their duties increased and roles changed. Ex. 1, Laing Decl., ¶ 37; Ex. 5, Fitch Decl., ¶¶ 5-8; Ex. 8, Declaration of Chris Price ("Price Decl."), ¶¶ 5-6.

Although he seeks to represent more than a thousand ASMs, AMOs-Store Ops and AMOs-Perishables, Chapman has *never* held the positions of AMO-Store Ops or AMO-Perishables and has not held the position of ASM (or its equivalent) since 1989. Ex. 4, Chapman Depo., 76:8-14. Moreover, Chapman admits that the duties of each of these positions vary from store to store and from time to time. *Id.*, 85:25-86:20. He also admits that he does not know whether ASMs and other AMOs have duties such as hiring, firing, disciplining, and the like. *Id.*, 139:21-142:4, 205:9-15.

### E. Chapman's Duties as an AMO-GM Starkly Contrast With Other Potential Opt-In Plaintiffs

A comparison of the duties that Chapman claims he had (or did not have) as an AMO with the duties of other ASMs and AMOs illustrates why this case cannot be litigated with representative testimony. Chapman claims that his primary job duties as an AMO-GM were

8

"running cash registers, stocking shelves, sweeping, cleaning, selling merchandise, counting inventory, pulling or rotating stock on shelves and assisting customers." Doc. 27, p. 3. He further states he "did not supervise any employees, nor was he involved in hiring employees, disciplining employees, or recommending or approving salary adjustments or employee transfers." *Id.*, p. 3-4.

In contrast, as an AMO at the St. Joseph store, Chris Price was responsible for all hiring in the grocery department, he wrote the schedule for those employees, and he was responsible for recommending their raises. He conducted their evaluations and terminated employees. Mr. Price was involved in selecting which products the store should sell in the grocery department, and he did almost all buying for the grocery department. He set prices for all new items in the grocery department and had the authority to change prices and put products on sale to increase sales and profitability. He also entered into contracts with vendors on behalf of the store. Ex. 8, Price Decl., ¶¶ 13-27.

Similarly, as an AMO, Doug Kehm is involved in hiring for his department – sometimes on his own. He plans and assigns the work within GM. He sets the schedule for the employees in his department. He approves time off, schedule changes, and vacation requests, and he can call GM employees into the store on their days off, if needed. He makes recommendations for promotions within the store, he conducts formal evaluations of all of the employees in his department, and he recommends their raises. He regularly trains people in his department. He changes the layout and display products in his department on his own authority, and he is involved in invoicing, pricing, buying, ordering, and setting seasonal merchandise for his department. He attends corporate trade/buy shows, attends manager meetings, conducts monthly and quarterly inventory and monitors profit and loss reports. Ex. 6, Kehm Decl., ¶¶ 5-25.

9

Other AMOs and ASMs have had similar duties to Messrs. Price and Kehm, which are remarkably different from the duties Chapman says he had as an AMO. *See*, *e.g.*, Declarations of Nick Fitch, ASM and AMO-Store Ops, Omaha #1 (Exhibit 5); Doug Kehm, AMO-GM, Omaha #1 (Exhibit 6); Matt Pulverenti, ASM and AMO-Store Ops, Omaha #9 (Exhibit 7); Brian Cheney, AMO-GM, Mission (Exhibit 9); Allison Skouge, AMO-Perishables, Sioux City #3 (Exhibit 10); Cheryl Guillaume, ASM, Sioux City #3 (Exhibit 11); and Justin Reker, ASM, Omaha #1 (Exhibit 12).

Hy-Vee has attached declarations from a sampling of ASMs and AMOs, and these managers all indicate that their primary duty was managing employees in a particular department or departments. All of them supervised numerous employees and either hired on their own or recommended candidates be hired. All were involved in setting or recommending employee raises. All disciplined employees for violations of policies, and all of them were involved in employee terminations, most of them on their own. Ex. 8, Price Decl., ¶¶ 7-12, 14, 16, 18, 20, 23, 32, 35; Ex. 5, Fitch Decl., ¶¶ 16-17, 19, 22, 26, 28-30, 39-46; Ex. 7, Pulverenti Decl., ¶¶ 6, 9, 13-18, 24-27; Ex. 9, Cheney Decl., ¶¶ 4-21; Ex. 6, Kehm Decl., ¶¶ 5, 7, 10, 15-17, 20; Ex. 10, Skouge Decl., ¶¶ 6, 19, 20, 22; Ex. 11, Guillaume Decl., ¶¶ 4, 10, 19-23; Ex. 12, Reker Decl., ¶¶ 3-5, 19, 23-26.

Moreover, many of these putative class members scheduled employees, recommended employees for promotions, formally evaluated employees, and were heavily involved in employee training. Ex. 8, Price Decl., ¶¶ 9, 16, 19, 25, 39, 45, 46; Ex. 5, Fitch Decl., ¶¶ 14, 16-18, 21, 30, 31, 33; Ex. 7, Pulverenti Decl., ¶¶ 11, 16-17, 20, 23, 24-25; Ex. 9, Cheney Decl., ¶¶ 9, 10, 15; Ex. 6, Kehm Decl., ¶¶ 12, 14-15, 18; Ex. 10, Skouge Decl., ¶¶ 11, 22-23; Ex. 11, Guillaume Decl., ¶¶ 9, 22-23, 25; Ex. 12, Reker Decl., ¶¶ 19-20, 27.

10

These ASMs and AMOs also played a significant role in monitoring sales and profits of their departments. Most of them were involved in pricing existing product, determining how the department and store should be laid out, and monitoring profits, and some even determined which products the department should sell and how much to charge for them. Ex. 8, Price Decl., ¶¶ 12, 15, 24, 26-27, 29-30; Ex. 5, Fitch Decl., ¶¶ 25, 35, 48, 50; Ex. 7, Pulverenti Decl., ¶¶ 18, 21, 28; Ex. 9, Cheney Decl., ¶¶ 7-8, 10-13; Ex. 6, Kehm Decl., ¶¶ 9, 19, 21; Ex. 10, Skouge Decl., ¶¶ 6, 9, 14-17; Ex. 11 Guillaume Decl., ¶¶ 26, 28, 31-34; Ex. 12, Reker Decl., ¶ 29.

Even assuming that Chapman truthfully characterized his job duties and responsibilities,[2] he has provided the Court with nothing to indicate that his experience is representative of the putative class. The testimony of the sampling of ASMs and AMOs attached to this Opposition clearly illustrates that Chapman's experience was *not* representative of the experiences of others in the putative class. Indeed, even Chapman admits the other AMOs in the St. Joseph store had managerial duties. Ex. 4, Chapman Depo., 103:1-25. In addition, when asked about the ASMs at Chapman's own store, he testified they also had significant managerial responsibilities:

> Q.    Did all of the assistant managers that worked at your store direct the duties of the hourly employees that worked up front?
>
> A.    Yes.
>
> Q.    Would you say that was their primary responsibility?
>
> A.    Yes.
>
> * * *
>
> Q.    Did the assistant managers provide input either – either to you or to the assistant manager of store operations or the manager of store operations regarding who should be promoted?
>
> A.    Yes, they could do that.

---

[2] Hy-Vee disputes Chapman's allegations and notes that the Missouri Department of Labor decided not to pursue Chapman's claim. Ex. 4, Chapman Depo., 176:11-177:22. Nonetheless, Hy-Vee assumes the truth of Chapman's allegations for purposes of this argument.

11

> Q. Do you know whether those recommendations were generally followed?
>
> A. Generally, yes. They – they would rec – it would be a recommendation as far as what a courtesy clerk who was ready to become as cashier would be the main people they would spon – would be supervising, and so they would recommend which courtesy clerks they felt like were ready to be – take on additional responsibility of cashiering. And with the manager of, they would agree or disagree with that.

Ex. 4, Chapman Depo. 86:21-87:2, 89:1-90:15.

As mentioned above, when Chapman was a Store Director, he himself classified some AMOs and ASMs as exempt and did so because he believed they met the FLSA requirements. Ex. 4, Chapman Depo. 111:11-112:6. Despite this, Chapman claims he has a "belief" that other AMOs and ASMs are similarly situated in that they *all* perform primarily non-exempt tasks. He bases this "belief" on his "experience of working at ten different stores over the course of his Hy-Vee career and his knowledge of the job duties of Assistant Managers at each store, as well as his tenure as a Store Director from 2000 through 2009." Doc. 27, p. 4. Again, this assertion directly contradicts his own testimony regarding the duties of the ASMs and AMOs in his own store, as well as the AMOs with whom he worked at the St. Joseph store. Moreover, when asked for specific testimony regarding the duties of other ASMs and AMOs, Chapman testified that he *did not know* whether ASMs around the company were involved in hiring, firing, scheduling, employee evaluations, and the like. Ex. 4, Chapman Depo., 139:21-142:4.

Clearly, Chapman's bald assertions that *all* ASMs and *all* AMOs perform primarily non-exempt duties are based on nothing more than rank speculation, and this speculation is contradicted both by Chapman's own testimony and the testimony of the ASMs and AMOs who provided declarations in connection with this Opposition. *See*, *e.g.*, Ex. 4, Chapman Depo., 142:8-148:3, 148:8-149:2. Given these facts, Chapman's claims clearly cannot be adjudicated

through representational evidence in a collective action.

## II.     LEGAL ARGUMENT

Although the standard courts apply when deciding whether to conditionally certify a class under the FLSA is lenient, Chapman has not even come close to meeting it.  Not only has he failed to show that he and other putative class members were victims of an illegal common policy or plan, his testimony demonstrates exactly the opposite.  No common policy or plan exists.  Moreover, the evidence Hy-Vee has submitted in connection with this brief illustrates Chapman's alleged duties are not at all similar to other AMOs and ASMs.  At the very least, any determination as to whether a particular AMO or ASM was properly classified as exempt would require an individualized inquiry into the duties and responsibilities of each ASM and AMO. Such circumstances render Chapman's claims inappropriate for collective class treatment.

### A.     The Two-Step Analysis

Section 216(b) of the Fair Labor Standards Act permits an individual employee to bring an action for unpaid overtime on behalf of himself "and other employees similarly situated."  29 U.S.C. § 216(b); *see also Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989).  District courts "have discretion, *in appropriate cases* . . . to implement" the collective action mechanism under Section 216(b) "by facilitating notice to potential plaintiffs."  *Id.* (emphasis added); *see also Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1233 (M.D. Ala. 2003) ("The power to authorize notice must, however, be exercised with discretion and only in appropriate cases").  Although the Eighth Circuit has not provided guidance on the appropriate procedural mechanism for a collective action, district courts within this Circuit have used a two-step procedure where discovery is not substantially complete.  *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 362-63 (W.D. Mo. 2007) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995)).  At the first step, the plaintiff moves for class certification for notice purposes.

13

If the motion is granted and notice issues, the defendant may later file a motion for decertification after discovery is largely complete. *Id.*

Because the plaintiff's motion is typically filed before significant discovery is complete, courts apply a "lenient" evaluation standard when deciding whether the plaintiff is similarly situated to other class members. *Young*, 503 F. Supp. 2d at 1229. Nonetheless, a plaintiff still has the *burden* to come forth with "substantial allegations" that (1) the putative class members were together the victims of a single decision, policy or plan that violates the law, and that (2) the position and duties of the named plaintiff are similar to those of putative class members. *Id.*; *Davis*, 408 F. Supp. 2d at 815. Although the burden is not high, it is not invisible; plaintiffs must present "some evidence to support their allegations." *Young*, 503 F. Supp. 2d at 1229; *see also Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010) (stating plaintiffs may not meet burden through unsupported assertions); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (same).

### B. Hy-Vee Does Not Have a Policy, Plan, or Practice of Classifying AMOs and ASMs as Exempt

Chapman has entirely failed to identify a single decision, policy, or plan regarding the classification of AMOs and ASMs. Rather, he admits that Hy-Vee had no such policy. Instead, Hy-Vee's individual Store Directors made those determinations at each store based on the duties and responsibilities of each particular manager. This fact is fatal to Chapman's Motion.

The United States Supreme Court recently explored this very concept in the landmark decision of *Wal-Mart Stores, Inc. v. Dukes*, where the Court explained that a company-wide policy of giving discretion to local managers is not a "policy" capable of evaluation on a class-wide basis. 131 S. Ct. 2541, 2554 (2011) (reversing 9th Circuit's affirmance of certification of Rule 23 class). Although *Dukes* was not an FLSA case, at least two district courts have found

14

this decision "illuminating" when denying motions for conditional certification under Section 16(b) of the FLSA. *Ruiz v. Serco, Inc.*, No. 10-cv-394-bbc, 2011 U.S. Dist. LEXIS 91215, *18-25 (W.D. Wis. Aug. 5, 2011); *MacGregor v. Farmers Ins. Exchange*, No. 10-CV-03088, 2011 U.S. Dist. LEXIS 80361, *13-15 (D.S.C. July 22, 2011). *See also Gales v. Winco Foods*, No. C 09-05813 CRB, 2011 U.S. Dist. LEXIS 96125, *21-35 (N.D. Calif. Aug. 26, 2011) (denying Rule 23 class certification of grocery store assistant managers despite uniform classification due to "significant evidence of variation" in job duties); *Cruz v. Dollar Tree Stores, Inc.*, Nos. 07-2050 SC, 07-4012 SC, 2011 U.S. Dist. LEXIS 73938, *16-17 (N.D. Calif. July 8, 2011) (relying on *Dukes* to decertify class of allegedly misclassified retail store managers).

As was the case in *MacGregor* and *Ruiz*, Hy-Vee simply does not have a company-wide policy regarding the classification of AMOs and ASMs. Rather, like those employers, Hy-Vee empowered each Store Director to classify the AMOs and ASMs in each store based on the duties the specific manager performed in that store. Thus, Hy-Vee actually has a "policy *against* having uniform employment practices." *See Dukes*, 131 S. Ct. at 2554 (emphasis supplied).

> The only corporate policy ... [Plaintiff's] evidence convincingly establishes is [a] "policy" of *allowing discretion* by local supervisors. ... On its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for [class treatment]; it is a policy *against having* uniform employment practices.

*Id.* This is exactly the situation present here.

Faced with the fact that Hy-Vee has no written, uniform policy regarding the classification of ASMs and AMOs,[3] Chapman is apparently attempting to turn former CEO Ron Pearson's statements encouraging Store Directors to make ASMs more a part of the management

---

[3] The only document that Chapman even references is a page from Hy-Vee's Employee Handbook, which simply states hourly employees who work more than 40 hours per week will be paid time-and-a-half overtime for those hours worked. Doc. 27, p. 4. Obviously, this has nothing to do with the question of how employees are classified. It only states Hy-Vee complies with the FLSA and pays hourly, non-exempt employees overtime. *Id.*

15

into such a policy. Doc. 27, p. 4. Given Chapman's own testimony, however, this attempt falls flat. Even according to Chapman, Mr. Pearson only raised the possibility of changing ASMs to exempt in order to help ASM retention. Moreover, Mr. Pearson made it "very clear" that he was only suggesting Store Directors classify ASMs as exempt *if the ASMs met the requirements to be exempt. See* Ex. 4, Chapman Depo. 45:4-9; s*ee also Young*, 503 F. Supp. 2d at 1229 (noting uniform policy must violate the law). In fact, Chapman himself did not classify his ASMs as exempt and never suffered any repercussion because of it. Ex. 4, Chapman Depo., 41:14-42:4. Chapman has not shown – and cannot possibly show – that he and other putative class members were victims of a single illegal decision, policy or plan when no such decision, policy or plan existed. *See Dukes*, *supra*; *Young*, *supra*; *Ruiz*, *supra*; *MacGregor*, *supra*. On this basis alone, this Court should deny conditional certification.

> **C.      Chapman is Not Similarly Situated to the Assistant Managers He Seeks to Represent**

Chapman's Motion and the modicum of evidence he has submitted about *his* primary duties while an AMO-GM have only shown this Court that, perhaps, *he* was not properly classified as exempt. Plaintiff's evidence does not show he is similarly situated to potential opt-ins. *See Freeman*, 256 F. Supp. 2d at 945 (relied on in *Young*, 503 F. Supp. 2d at 1229, 1232). In fact, his evidence illustrates how *different* his duties were from those of other managers.

The facts and reasoning of *Freeman* are instructive. There, the plaintiff alleged that he was similarly situated to "other salaried Wal-Mart employees below officer-level who worked in excess of 40 hours per week without overtime compensation." *Id*. at 943. The plaintiff argued that Wal-Mart engaged in a pattern, practice, and policy of improperly classifying employees as exempt despite knowing that they were not exempt employees under the FLSA. *Id*. The court refused to conditionally certify the class because the plaintiff failed to present sufficient evidence

16

that members of the proposed class were similarly situated through the duties they performed or a common illegal policy. *Id.* at 945; *see also Young*, 503 F. Supp. 2d at 1231-32.

Without any evidentiary support, Chapman argues in his Motion that all AMOs and ASMs are similarly situated, but the evidence shows the duties of each assistant manager depend upon the needs of the store, as determined by its Store Director's management style, the size of the store, and its business needs. *See* Sections I.A., I.C., *supra.* Indeed, Chapman has only succeeded in "substantially alleging" that *his personal duties* did not qualify *him* for exempt status. Those duties contrast with the job descriptions of both the AMO and ASM roles and the testimony of numerous people who have held those positions. *See* Section I.E., *supra.* Chapman is not similarly situated to the putative class members due to the *contrast* between his alleged primary duties as the AMO-GM at St. Joseph and the overwhelming evidence that other AMOs' and ASMs' duties *were not the same* as those of Chapman. The Court should deny conditional certification for this additional reason.

### D. Courts Faced with Similar Facts Have Consistently Denied Conditional Certification

Courts across the country have consistently denied conditional certification in retail manager misclassification cases. These courts have aptly explained the inherent difficulty of class treatment in these cases due to the fact-intensive nature of determining whether each employee is correctly classified.[4]

For example, in *Diaz v. Electronics Boutique of Am., Inc.*, No. 04-CV-0840E(Sr), 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005), relying on job descriptions, the plaintiffs alleged that store managers, as a group, were misclassified as exempt because they did not have sufficient discretion in decision-making. *Id.* at *5, 14. The Court held, however, that whether an

---

[4] Plaintiff's Motion and Suggestions in Support do not cite a single case involving alleged misclassification in a retail setting. *See* Docs. 26 and 27.

17

employee is exempt is determined by the individual employee's actual work activities and the time spent on each, not by the employer's characterization of those activities through a job title or job description. *Id.* at \*13-14. The court explained that the responsibilities of each putative class member "may differ and thus a highly fact-specific and detailed analysis of each store manager's job duties is required, making class treatment inappropriate." *Id.* at 14.

Similarly, in *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1271-72 (M.D. Ala. 2004), plaintiffs moved for conditional certification of a class to include all store managers and assistant managers where Rite Aid had a written policy classifying all of them as exempt. Plaintiffs argued that they performed non-managerial duties for the majority of their working hours despite the existence of a formal Rite Aid job description listing many managerial duties. *Id.* at 1271. The court denied conditional certification, finding that the determination of whether each manager was correctly classified as exempt under the executive exemption would require inquiry into each person's day-to-day tasks. *Id.*

The Eastern District of New York reached a similar conclusion in *Myers v. The Hertz Corp.*, No. 02-CV-4325, 2006 U.S. Dist. LEXIS 100597 (E.D.N.Y. May 18, 2006), *affirmed on other grounds*, 624 F.3d 537, 554-55 (2d Cir. 2010). There, a station manager at a Hertz rental car location sought conditional certification of a nationwide class of station managers due to alleged misclassification. *Id.* at \*2. Like Rite Aid, Hertz had a policy to classify all station managers as exempt based on the executive exemption. *Id.* at \*2, 7-8. Nonetheless, the *Hertz* court declined to issue nationwide notice because, as in this case, the determination of these retail managers' right to overtime "would require a highly individualized analysis as to whether the duties they performed fell within the exemption." *Id.* at \*13.

In *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469 (S.D.N.Y. 2010), the plaintiff alleged Marshalls misclassified assistant managers as exempt when they really performed primarily non-exempt duties. *Id.* at 471. Guillen did not challenge the content of Marshalls' standardized job descriptions, which listed mostly managerial duties; rather, he asserted – like Chapman – that "he was not actually given job duties in conformity with these principles." *Id.* at 476.[5] The court denied Guillen's request for nationwide notice and found the plaintiff failed to show that he was similarly situated to other assistant store managers in that they were required to perform non-managerial tasks in contravention of the formal job description. *Id.* Notably, the plaintiff submitted substantially more evidence than Chapman, including five declarations from other ASMs in several different stores who claimed they were likewise required to spend most of their time engaged in non-exempt work. *Id.* at 477. The court nonetheless denied conditional certification, characterizing this amount of evidence as "extremely thin."[6]

Unlike *Electronics Boutique, Rite Aid*, *Hertz*, and *Marshalls* – cases in which the employer classified all managers with a certain job title as exempt – Hy-Vee has never had a uniform policy requiring AMOs and ASMs be classified as exempt. Thus, class treatment makes

---

[5] Like the job descriptions in *Guillen*, the job descriptions of the putative class members in this case also identify numerous managerial duties. *See* Exs. C and D, attached to the Laing Declaration. Chapman claims he was not given these duties, *see* Ex. 4, Chapman Depo., 142:8-148:3, 148:8-149:2, but, even if true, the declarations attached to this Opposition illustrate that his duties were so vastly different from the class he seeks to represent that he is not similarly situated to them.

[6] For other examples of cases where courts have declined to certify a retail class, *see Vasquez v. Vitamin Shoppe Industries, Inc.*, No. 10 Civ. 8820 (LTS)(THK), No. 10 Civ. 8820, 2011 U.S. Dist. LEXIS 74376 (S.D.N.Y. July 11, 2011) (declining to conditionally certify class of retail store managers where plaintiff's allegations of substantial similarity were "too thin a reed"); *Bramble v. Wal-Mart Stores, Inc.*, No. 09-4932, 2011 U.S. Dist. LEXIS 39457 (E.D. Pa. April 12, 2011) (declining to conditionally certify class of retail asset protection coordinators due to individualized inquiries as to tasks each person performed); *Brickey v. Dolgencorp, Inc.*, 272 F.R.D. 344 (W.D.N.Y. 2011) (denying conditional certification of class of retail associates); *Eng-Hatcher v. Sprint Nextel Corp.*, 07 Civ. 7350 (BSJ), 2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13, 2009) (denying conditional certification of retail sales consultants where plaintiff failed to show common illegal policy); *Laroque v. Domino's Pizza*, 557 F. Supp. 2d 346, 355-56 (E.D.N.Y. 2008) (denying preliminary certification of retail customer service reps and drivers beyond store where plaintiffs worked in absence of factual support of improper conduct in other locations); *Basco v. Wal-Mart Stores, Inc.*, No. 00-3184 Section "K"(4), 2004 U.S. Dist. LEXIS 12441 (E.D. La. 2004) (finding allegations that retailer had policy to minimize overtime insufficient to support class of retail associates).

even less sense in this case. Like those cases, conditional certification here would inevitably result in the individualized inquiries of 1,750 assistant managers to determine whether each one of them met the requirements of the exemption.

The evidence Chapman has submitted with his Motion speaks only to *Chapman's* duties when he was an AMO-GM. He has done nothing to show that he is similarly situated to even one other AMO-GM, let alone all or most other AMO-GMs, AMO-Store Ops, AMO-Perishables, and ASMs. Tellingly, Chapman fails to submit even one affidavit illustrating that he is similarly situated to even one other potential opt-in plaintiff. *See Young*, 503 F. Supp. 2d at 1229 (noting plaintiff must present evidence of similarity of position and duties between named plaintiff and putative class members) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001)). Meanwhile, the declarations Hy-Vee has submitted in connection with this Opposition illustrate that Chapman's experience was, in fact, *not* similar to the experiences of other putative class members. *See Freeman*, 256 F. Supp. 2d at 945 (denying conditional certification where affidavits showed dearth of uniform policy). Moreover, Chapman admits that the AMOs in the store he managed were properly classified as exempt. *See* Section I.C., *supra*. In fact, when Chapman learned that he was going to be the AMO-GM at St. Joseph, he assumed he would be properly classified as exempt because of his knowledge regarding the duties of other AMOs in the company. *See* Section I.B., *supra*. As numerous courts have recognized, claims under these facts are simply not suitable for class treatment, and this Court should deny conditional certification for this additional reason.

### E. Courts in this District Deny Conditional Certification in Similar Situations

Hy-Vee is aware of only one published decision in this district in which the court granted conditional certification in a misclassification case, and the circumstances in that case were completely different. *See Davis v. Novastar Mortgage, Inc.*, 408 F. Supp. 2d 811 (W.D. Mo.

20

2005).[7] In *Davis,* the evidence illustrated that the proposed class of approximately 120 "loan originators" performed the same essential job duties and responsibilities – collecting information to complete loan applications and forwarding applications to an underwriting department for an approval decision. *Davis*, 408 F. Supp. 2d at 816-17. In addition, it was clear that the decision to classify all loan originators as exempt was part of a company-wide plan implemented at the direction of the company's president. Moreover, 19 loan originators chose to join in the case before notice was issued. *Id.*

None of these factors is present in this case; rather, the opposite is true. Each AMO and ASM has varied and distinct job duties depending upon the needs of the particular store. Hy-Vee has no company-wide plan or policy to classify all AMOs and ASMs as exempt, and not one putative class member has joined in this class.[8] *Cf. Davis*, 408 F. Supp. 2d at 816-17.

This case is much more comparable to *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1228-32 (W.D. Mo. 2007). In *Young*, the plaintiff sought to represent 4,500 exempt employees at "Levels 6 and 7" within the company. The Court denied conditional certification, noting that no common policy existed requiring classification of Level 6 and 7 employees as exempt, and, in fact, not all associates were classified as exempt. Further, the duties across all positions were "so varied that it is hard to conceive of a single policy that could govern them all." *Id.*

That is exactly the situation presented here. Hy-Vee had no policy requiring that all

---

[7] Two other distinguishable decisions in this district involving alleged misclassification have not been published. *See McKinzie v. Westlake Hardware, Inc.*, No. 09-0796-CV-W-FJG, 2010 U.S. Dist. LEXIS 58078 (W.D. Mo. June 11, 2010); *Boyle v. Barber & Sons, Co.*, No. 03-0574-CV-W-FJG, 2004 U.S. Dist. LEXIS 29168 (W.D. Mo. May 21, 2004).

[8] Courts have rejected conditional certification in cases, like this one, where the plaintiff has made no showing that anyone else desires to join the case. *See e.g. Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (followed in *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164-65 (D. Minn. 2007); *Knutson v. Blue Cross*, 2008 U.S. Dist. LEXIS 72414, *9 (D. Minn. Sept. 23, 2008) (same); *Simmons v. T-Mobile USA, Inc.,* 2007 U.S. Dist. LEXIS 5002, *34-36 (S.D. Tex. Jan. 24, 2007). In these cases, courts have recognized the inherent unfairness of requiring a defendant to go to the considerable expense of defending such a large lawsuit without a strong showing from the plaintiff that at least several opt-in plaintiffs wish to join the suit.

ASMs and AMOs be classified as exempt. And, in fact, not all ASMs and AMOs *were* classified as exempt. Further, as demonstrated by the comparison of Chapman's alleged duties with the duties of the AMOs and ASMs who have provided declarations, the duties are so varied that there could be no single policy governing all. *See* Sections I.D., I.E., *supra*.

### F. The Policies Underlying Conditional Certification and Class Treatment Are Not Present in this Case

Chapman's failure to present even colorable evidence of a common illegal policy requiring misclassification of AMOs and ASMs renders this putative class action unmanageable and inappropriate for class determination, especially in light of the fact-intensive inquiry necessary to determine if a *retail* assistant manager is exempt under the executive exemption.

The very purpose of the collective action procedure is to promote efficiency in the context of commonality. *See Hoffman-LaRoche*, 493 U.S. at 171. Thus, the manageability of Chapman's proposed class and whether class treatment would advance judicial economy and efficiency must be considered before a court may authorize notice. *See Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991); *see also Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003). If analysis of the asserted violation requires an individual inquiry, then no representative proof exists, and the Court should deny conditional class certification. *See Rite Aid*, *supra*; *Guillen*, *supra*; *Hertz, supra; Diaz, supra*.

As noted above, Chapman challenges Hy-Vee's assertion that he and potential opt-in plaintiffs were exempt as *bona fide* executives under 29 U.S.C. § 213(a)(1). Accordingly, the Court will be required to analyze each of the requirements of that exemption to determine if they were appropriately classified. *See* 29 C.F.R. § 541.100(a) (stating executive exemption); 29 U.S.C. § 541.102 (defining "management" duties in 541.100(a)); 29 U.S.C. § 541.104 (defining "two or more employees" in 541.100(a)); 29 U.S.C. § 541.105 (defining "particular weight" in

541.100(a)); 29 U.S.C. § 541.600 (defining amount of weekly salary required in 541.100(a)); 29 U.S.C. § 541.700 (defining "primary duty" in 541.100(a)). The Department of Labor has recognized that the application of those requirements, particularly in the context of retail managers, requires an individualized inquiry to determine whether each manager is appropriately classified. 29 C.F.R. § 541.106(a), (b). The DOL also acknowledges that assistant managers may spend more than 50% of their time performing non-exempt work, such as running a register, but nonetheless be properly classified as exempt due to the performance of concurrent managerial duties. *See* 29 C.F.R. § 541.106(b) ("An assistant manager can supervise employees and serve customers at the same time without losing the exemption."); *see also* 29 C.F.R. § 541.700(c) (stating assistant manager in retail establishment may still be properly exempt if spends more than 50% of time performing non-exempt work).

Critically for determination of Chapman's conditional certification motion, the Regulations specifically provide that where an employee performs concurrent duties, such as in a retail grocery store such as Hy-Vee, "[w]hether an employee meets the requirements" of the exemption "is determined *on a case-by-case basis*." 29 C.F.R. § 541.106(a) (emphasis added). Courts also recognize the individualized inquiry. *See Mike*, 274 F. Supp. 2d at 220 ("[W]hether an employee is exempt is extremely individual and fact-intensive, requiring a detailed analysis of the time spent performing [managerial] duties and a careful factual analysis of the full range of the employee's job duties and responsibilities."); *Diaz*, 2005 U.S. Dist. LEXIS 30382 at *10 (same); s*ee also Bramble*, 2011 U.S. Dist. LEXIS 39457 at *19 (finding courts must look to actual duties performed to determine whether plaintiff similarly situated); *Morisky v. Pub. Serv. Elec. & Gas Co.,* 111 F. Supp. 2d 493, 498-99 (D.N.J. 2000) (finding litigating exemption question for each class member "would be anything but efficient").

As explained above, individual Store Directors define the duties of each of their AMOs and ASMs. The duties and responsibilities vary widely based on the needs of the store, the aptitude of the manager, the amount of ownership the manager takes, and the confidence the Store Directors have in the individual managers. Thus, the duties and responsibilities of ASMs and AMOs can be vastly different even at the same store, not to mention different stores. Accordingly, the determination of whether Hy-Vee violated the FLSA will inevitably require inquiry into each putative opt-in plaintiff's day-to-day circumstances, Chapman's action simply does not serve the purposes of efficiency and judicial economy.

### G. Chapman Cannot Represent the Putative Class Because His Representation Creates a Conflict for Potential Class Members

This Court should also deny Chapman's motion for conditional certification because his representation could constitute a direct conflict of interest with opt-in plaintiffs. Chapman, as a former Store Director from 2000 until January 2009, could be an "employer" as defined by the FLSA, 29 U.S.C. § 203(d), and could be found liable for alleged misclassification in violation of the FLSA if he were to prevail in representing the class and then prevail on the merits. Chapman admits that he classified AMOs at his own store as exempt. Meanwhile, he asserts that all AMOs were misclassified. As such, Chapman's own assertions allege a cause of action against himself, as the "employer" of AMOs in his store. Courts do not usually consider the adequacy of the named plaintiff's representation on a motion for Section 216(b) conditional certification. *See Young*, 503 F. Supp. 2d at 1228 (noting Rule 23 factors, such as adequacy of representation, not applied). Regardless, the principle of fairness that must be at the foundation of any representative class or collective action is simply not present where the only plaintiff to this action has a direct conflict of interest with potential opt-in plaintiffs. *See* 32-21P MANUAL FOR COMPLEX LITIGATION 21 (stating class actions created "to manage group litigation *fairly* and

24

efficiently) (emphasis added); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992) (noting representatives, absentees in class action must have shared interests, no antagonism).

### III.   PROBLEMS WITH PROPOSED NOTICE

In the event this Court disagrees with Hy-Vee and conditionally certifies the class Chapman seeks, the Court should not approve in its current form the Notice of Lawsuit Against Hy-Vee, Incorporated ("Notice," Doc. 27-1) Chapman has attached to his Motion.

First, the Courts should strike the case caption of any such notice because it could incorrectly cause a class member to think this Court agrees with the contentions of the plaintiff or that the case is "judicially sponsored."  *See Boyle*, 2004 U.S. Dist. LEXIS 29168 at *14-15.

Second, courts in this district have also followed the well-accepted rule that such notice should issue only to those employees or former employees who worked for defendant from, at the most, three years prior to the date the court enters an order conditionally certifying the class. *Fast*, 243 F.R.D. at 364.  There is no basis for Chapman's request that notice issue to those who worked for Hy-Vee for the three years prior to November 5, 2010, the date Chapman filed this action.  Instead, notice should only issue to those employees who worked for Hy-Vee as an AMO or ASM within three years of the date this Court conditionally certifies this class.

Third, the Notice should be amended to include a disclosure that any opt-in plaintiff may be responsible for defendant's costs if defendant prevails.  *McKinzie*, 2010 U.S. Dist. LEXIS 58078 at *13.  Hy-Vee suggests adding, "If you do not prevail on your claim, court costs and expenses may possibly be assessed against you" as the last sentence of the Section of Chapman's proposed Notice entitled "Effect of Joining or Not Joining This Lawsuit."  *Id.*

Fourth, Hy-Vee should not be required to produce the last known personal telephone number of each putative class member.  Doc. 27, p. 9.  The last known address should be sufficient for notice in the absence of any compelling reason.  *Hembree v. Mid-Continent*

*Transp., Inc.*, No. 08-6094-CV-SJ-HFS, 2010 U.S. Dist. LEXIS 105538, *15-16 (W.D. Mo. Oct. 4, 2010); *see also Kautsch v. Premier Comm'cns*, 504 F. Supp. 2d 685, 691 (W.D. Mo. 2007) (requiring production only of names and addresses). In addition to the fact that Chapman has no need for this information, requiring Hy-Vee to provide telephone numbers would be unduly burdensome, as Hy-Vee does not keep employee telephone numbers in a central location. Hy-Vee would be required to request this information from all of its stores, many of whom also do not keep phone numbers in a central location – assuming they even have them.

Finally, Hy-Vee asks the Court to include contact information for its defense counsel on the proposed notice. Potential opt-in plaintiffs may contact the attorneys involved in this matter, and fairness dictates that these managers be able to choose to whom they would like to speak, counsel for Chapman or for Hy-Vee. *See Creten-Miller v. Westlake Hardware, Inc.*, C.A. No. 08-2351-KHV, 2009 U.S. Dist. LEXIS 60393, *10-11 (D. Kan. July 15, 2009) (permitting defense counsel's contact information on notice to potential opt-ins).

## IV.   CONCLUSION

For all of the foregoing reasons, Defendant Hy-Vee, Inc. respectfully requests that the Court deny Plaintiff's Motion for Conditional Certification and Notification of Putative Class Members Pursuant to 29 U.S.C. § 216(b), with prejudice.

26

Respectfully submitted,


/s/ Jeannie M. DeVeney

| | |
|---|---|
| Jeannie M. DeVeney | MO #46885 |
| Daniel B. Boatright | MO #38803 |
| Anne E. Baggott | MO #59187 |

LITTLER MENDELSON, P.C.
1201 Walnut Street
Suite 1450
Kansas City, MO  64106
Telephone: 816-627-4400
Facsimile: 816-627-4444
jdeveney@littler.com
dboatright@littler.com
abaggott@littler.com

ATTORNEYS FOR DEFENDANT
HY-VEE, INC.

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of September, 2011, I electronically filed the foregoing via CM/ECF, which sent notice of such filing to the following counsel of record:

Bruce C. Jackson, Jr.
Paul E. Torlina
Ryan T. Dryer
ARNOLD, NEWBOLD, WINTER, & JACKSON, P.C.
1125 Grand Boulevard, Suite 1600
Kansas City, Missouri 64106
bcjackson@anwjj.com
petorlina@anwjj.com
rtdryer@anwjj.com

ATTORNEYS FOR PLAINTIFF

/s/ Jeannie M. DeVeney
ATTORNEY FOR DEFENDANT

28